UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

MICHELLE WONG,

                   Plaintiff,

          -against-                            **MEMORANDUM AND ORDER**
                                               19-CV-6900 (RPK) (VMS)

THE CITY OF NEW YORK and LINDSAY
A. EGAN,

                   Defendants.
------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    *Pro se* plaintiff Michelle Wong brings an action under 42 U.S.C. § 1983 against (1) Lindsay A. Egan, an attorney who works for the New York City's Administration for Children's Services ("ACS"), and (2) the City of New York.  Defendants have moved to dismiss plaintiff's third amended complaint.  Defendants' motion to dismiss is granted.  Plaintiff's federal-law claims are dismissed with prejudice, and plaintiff's state-law claims are dismissed without prejudice to refiling in state court.  The Clerk of Court is directed to close this case.

## BACKGROUND

### A.    Factual Background

    The following factual allegations are taken from plaintiff's third amended complaint and the documents incorporated in the third amended complaint by reference.

### 1.    Canada

    Plaintiff Michelle Wong is a Canadian citizen.  *See* Third Am. Compl. at 1 (Dkt. #44-1) ("Compl.").  For years, she lived in Calgary with her son.  *See id.* at 1-2, 9.  There, she alleges that she noticed that she and her son showed signs of "muscle atrophy," which she believes to have been caused by a "toxin."  *Id*. at 23.

In Canada, Ms. Wong consulted with doctors about receiving treatment. *See id.* at 5. The doctors in Calgary denied that she or her son had muscle atrophy, and they told her that her hands were normal. *See id.* at 1, 5. Ms. Wong also eventually consulted with doctors in Ottawa. *See id.* at 28. Save for one, the doctors in Ottawa also denied that she or her son had muscle atrophy. *See ibid.* Ms. Wong alleges that these doctors gave her a false diagnosis to "cover up . . . the crime which may relate to [the] toxin" that allegedly caused her condition. *Ibid.*

Further, Ms. Wong alleges that these doctors attempted to "compile false medical reports" suggesting that she had a mental illness. *Id.* at 1. Beyond their diagnoses, the doctors found her to be delusional. *See id.* at 5. At least one doctor reported her to the police for seeking medical attention without foundation. *See ibid.*

Indeed, Ms. Wong alleges that these doctors "framed [her]" as delusional. *Id.* at 1. She alleges that many were in fact "imposters pos[ing] as doctors." *Id.* at 20. According to Ms. Wong, "[t]he doctors or medical clinic would have different people come see [her] at different appointments as doctors or medical staff and claim[] to be the same person." *Id.* at 26. She alleges that when she relayed this information to other doctors, she was "accused of mental illness." *Id.* at 25. She believes this pattern further suggests that doctors were "cover[ing] up a crime." *Ibid.*

Ms. Wong contacted the police in Calgary. *See ibid.* The police refused to investigate. *See ibid.* Instead, Ms. Wong alleges that the police began to "harass[] [her]." *Id.* at 5. She alleges that the police "submitted false information" to Canadian judges to obtain mental health warrants. *Id.* at 1. After executing those warrants, the police allegedly "submitted false information" to the hospitals where she was detained. *Id.* at 7. The police ultimately obtained and executed at least two mental health warrants for her detention, and Ms. Wong was ultimately detained at least once in a hospital in Canada to address her mental health. *See id.* at 7.

2

The Calgary police also notified Child Family Services. *See id.* at 2, 9. Ms. Wong alleges that the department closed her case without expressing any concerns about her care of her son. *See id.* at 16.

Ms. Wong moved to Ottawa to "report [her] case of police corruption involving medical doctors to the headquarters of the" Royal Canadian Mountain Police. *Id.* at 26. But they did not act on her allegations. *Ibid.* She asserts that she was denied the right to an investigation. *Ibid.*

### 2.      The United States

Unsatisfied, Ms. Wong moved temporarily to the United States. *See id.* at 1. Here, she again sought medical care. *See ibid.* But when she went with her son to a hospital in New York City, the medical staff there also denied that she or her son had muscle atrophy. *See ibid.* Instead, they called New York City's Administration for Children's Services ("ACS"). *See ibid.*

A supervisor at ACS invited Ms. Wong for a meeting, and Ms. Wong met with several staff members—but not defendant attorney Lindsay A. Egan—to discuss her concerns. *See ibid.* During this meeting, Ms. Wong alleges that ACS "bombarded [her son] with questions" and "made [him] cr[y]." *Id.* at 33. Ms. Wong told ACS staff "that [she] was framed by the Canadian police and doctors to have [a] mental illness." *Ibid.* She further stated that Calgary police had "submitted false information," and that imposters were "compil[ing] false medical reports" to "frame [her]." *Ibid.*

Ms. Wong gave ACS documents in an attempt to support her claims. *See id.* at 2. These documents included two mental health warrants issued for her detention. *Ibid.* The first states that a judge found that she "is suffering from mental disorder, and likely to cause harm to the person or others or to suffer substantial mental or physical deterioration or serious physical impairment." *Id.* at Ex. B. It also states that she "is very delusional" and takes her son "to a physician repeatedly [without] foundation so a referral to [Child Family Services] has also been made." *Ibid.*

The second warrant also indicates that a judge found that Ms. Wong was "suffering from mental disorder, and likely to cause harm to the person or others or to suffer substantial mental or physical deterioration or serious physical impairment." *Id.* at 19. It further explains that she "[t]hinks physicians . . . who are treating her are imposters," that she has a "[p]revious diagnosis of delusional disorder," that she was "admi[tted] . . . for [two] months due to delusional disorder," and that she "[m]ay be aggressive to peace officers." *Ibid.*

Lastly, Ms. Wong included a discharge report after her hospital admission. *Id.* at Ex. D. This report states that she has "[s]trong delusions of persecution" and that she "[b]elieves [the police] and private investigators are after her." *Ibid.* It notes the involvement of Child Family Services and states that Ms. Wong presents a risk of "harming self or other." *Ibid.* Ms. Wong has annexed these documents as part of her complaint. *See id.* at Ex. B, D, J.

ACS did not report any crime committed against Ms. Wong's son or that she had been "framed by the Canadian police and doctors" to cover up any crime. *See id*. at 2.

### 3.    Family Court Proceedings

Represented by defendant Lindsay A. Egan, ACS filed a neglect petition in family court. *See id*. at 2. Ms. Wong describes this petition as alleging that she "ha[d] [a] mental illness" that "pos[ed] imminent harm to [her] son." *Ibid.* Ms. Wong asserts that Ms. Egan "failed to do any . . . fact-checking before filing" this petition. *Id.* at 3. Further, Ms. Wong alleges that the decision to file the petition "completely disregarded the evidence" that she gave to ACS. *Id.* at 1.

Ms. Wong alleges that during family court proceedings, Ms. Egan "intentionally concealed evidence" from the court—namely, the evidence that Ms. Wong had sent to ACS. *Id.* at 2. She also alleges that Ms. Egan at one point falsely told opposing counsel that Ms. Wong's son was "wearing the same outfit" in court two days in a row. *Ibid.* Finally, Ms. Wong alleges that during proceedings, ACS called the police in Costa Mesa, California to "harass[] . . . [her] son," who was

4

staying in California with her ex-husband. *Ibid.* According to Ms. Wong, ACS called the police to enforce an order from the family court requiring her to remain in New York, but Ms. Egan falsely represented to the family court that ACS had called the police for a welfare check. *Ibid.*

Ms. Egan ultimately withdrew the neglect petition. *See id.* at 2. The family court judge dismissed the case without taking evidence. *See ibid.*

### B.    Procedural History

Ms. Wong filed her initial complaint in this case on December 9, 2019. *See* Complaint (Dkt. #1). She filed the operative complaint—the third amended complaint—on March 4, 2020. *See* Third Am. Compl. at 1. While the case has been pending, Ms. Wong has filed six applications for immediate injunctive relief to have the FBI investigate the allegations she presented to ACS. *See, e.g.*, Sixth Mot. for Order to Show Cause (May 13, 2020) (Dkt. #57). The Court has rejected each request. *See, e.g.*, Order (May 15, 2020) (Dkt. #59).

The third amended complaint seeks injunctive and monetary relief against defendants Lindsay Egan and New York City under 42 U.S.C. § 1983. It can be read to assert claims under 42 U.S.C. § 1983 for malicious prosecution, malicious abuse of process, and other unnamed torts. *See id.* at 1-3. It alleges that Ms. Egan (i) failed to fact-check Ms. Wong's assertions; (ii) filed a neglect petition against her; (iii) concealed evidence from the family court; (iv) represented to opposing counsel that Ms. Wong's son wore the same outfit two days in a row; and (v) falsely represented that a police call to enforce a court order was in fact a welfare check. *See ibid*. The complaint also can be read to assert state-law claims for malicious prosecution, malicious abuse of process, defamation, and intentional infliction of emotional distress. *Ibid.*

In addition to seeking monetary relief, the complaint can be read to assert that Ms. Wong is entitled to an injunction ordering ACS to report her allegations to the NYPD and the FBI on the grounds that ACS must report a "potential crime against a minor." *See id.* at 34; Pl.'s Opp'n at 3

(Dkt. #58).  Additionally, the complaint can be read to assert that Ms. Wong is entitled to an injunction under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") ordering ACS to return various forms that Ms. Wong signed to "allow them to have access to [her] and [her] son's health information."  Compl. at 35.

Defendants have moved to dismiss the complaint in its entirety for failure to state a claim. *See* Defs.' Notice of Mot. (Dkt. #52).

### STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Ashcroft*, 556 U.S. at 679.

Plaintiff is proceeding *pro se*.  "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief."  *Ibid.*  To assess plausibility, I consider the "allegations on the face of the complaint" as well as "documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quotations and marks omitted).

**DISCUSSION**

Defendants' motion to dismiss the complaint is granted.  Absolute immunity bars plaintiff from recovering damages from Ms. Egan.  Plaintiff cannot recover damages from New York City without a basis for municipal liability.  Plaintiff is not entitled to relief ordering any defendant to report plaintiff's allegations or to return plaintiff's consent forms.  And the Court declines to exercise supplemental jurisdiction over any remaining state-law claims.

**I.    Plaintiff cannot recover damages from Ms. Egan under Section 1983.**

Plaintiff's claims against Ms. Egan are barred by prosecutorial immunity.  Section 1983 "subject[s] '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws.'"  *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006).  But the section is read "in harmony with general principles of tort immunities and defenses rather than in derogation of them."  *Ibid.*  "[A] government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process."  *Id.* at 396.

Plaintiff's claims against Ms. Egan all seek to hold her liable for advocacy intimately associated with the judicial process.  Plaintiff faults Ms. Egan for failing to fact-check sufficiently before filing a neglect petition, but Ms. Egan has absolute immunity from claims of "inadequate investigation" that relate to allegations that filings were "based on insufficient or persuasive evidence."  *Schnitter v. City of Rochester*, 556 F. App'x 5, 7 (2d Cir. 2014).  Plaintiff faults Ms. Egan for filing the neglect petition itself, but "it has long been settled" that attorneys are entitled to absolute immunity for "initiating" a proceeding on behalf of the government.  *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995).  Plaintiff alleges that Ms. Egan concealed evidence from the family court, but Ms. Egan has absolute immunity from claims relating to the "deliberate withholding of exculpatory information."  *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir.

2005).  Finally, plaintiff takes issue with Ms. Egan's representations to opposing counsel and the court, but Ms. Egan has immunity from claims relating to such representations made as an advocate during proceedings.  *See Kalina v. Fletcher*, 522 U.S. 118, 124-25 (1997) (trial); *Pinaud v. Cnty of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (grand jury and plea bargaining).

That Ms. Egan is not a prosecutor is irrelevant.  Absolute immunity extends to "non-prosecutor officials when they are performing 'functions analogous to those of a prosecutor.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Butz v. Economou*, 438 U.S. 478, 515 (1978)).  This includes advocacy "closely associated with the conduct of litigation or potential litigation in civil suits." *Mangiafico*, 471 F.3d at 396.  And it includes advocacy by ACS attorneys relating to "whether to seek removal of a child from the custody of the child's parents on the ground of child abuse," *Cornejo*, 592 F.3d at 124, or neglect, *see Black v. Ranley*, No. 17-CV-9026, 2018 WL 2766138, at *7 (S.D.N.Y. June 8, 2018); *Williams v. Savory*, 87 F. Supp. 3d 437, 455 (S.D.N.Y. 2015); *Koger v. New York*, No. 13-CV-7969, 2014 WL 3767008, at *7 (S.D.N.Y. July 31, 2014); *cf. Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984) (affording absolute immunity to attorney who "initiates and prosecutes child protective orders" in family court due to "the need to pursue protective child litigation vigorously and the potential for subsequent colorable claims").  That absolute immunity bars recovery for damages from Ms. Egan in this action.

To the extent that any of plaintiff's claims fall outside the scope of Ms. Egan's absolute immunity, those claims fail because they do not allege the violation of any statutory or constitutional right.  For example, plaintiff faults Ms. Egan for representing to opposing counsel that Ms. Wong's son wore the same outfit two days in a row.  *See* Compl. at 2-3.  Even if Ms. Egan were not performing her functions as an advocate for ACS when she made that comment, Ms. Wong has not explained how such conduct violates any federal law.  Section 1983 establishes

a private right of action only for "money damages against state officials, acting 'under color' of law, who violate a constitutional or statutory right." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018).

Similarly, plaintiff may not hold Ms. Egan liable for what other ACS employees did. For example, plaintiff alleges that other staff members at ACS "bombarded [her son] with question[s]" and "made [him] cry" during a meeting, Compl. at 33, and that ACS called the police in Costa Mesa, California to "harass[] . . . [her] son," *id.* at 3. To the extent such conduct does not implicate absolute immunity, plaintiff has not alleged that Ms. Egan participated in these actions. And "[i]f [an individual] defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). Plaintiff's claims for damages against Ms. Egan must therefore be dismissed for failure to state a claim.

## II. Plaintiff has not stated a claim for municipal liability under Section 1983.

Plaintiff has also failed to state a Section 1983 claim against New York City. To hold a municipality liable under Section 1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional" or other federal right. *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). Ordinarily, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).

Plaintiff has not pleaded any of these forms of policy. The closest she comes to suggesting involvement of a policymaking official in her case is identifying an ACS "supervisor" who asked

her to "come in to meet" and who "concealed" her case information during her neglect proceedings. Compl. at 1. But plaintiff has not alleged that this supervisor had final authority over what petition to file or what evidence to present. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) ("Where a plaintiff seeks to hold a municipality liable for a 'single decision by [a] municipal policymaker' . . . the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit."). Nor has plaintiff alleged any practice so widespread as to have the force of law. Plaintiff makes allegations only about the actions taken by Ms. Egan and other ACS employees as they addressed her case. *See* Compl. at 1-3. Such isolated acts "by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability," *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012), and do not alone show that an "alleged practice [was] so manifest as to imply the constructive acquiescence of senior policymaking officials," *Hu v. City of New York*, 927 F.3d 81, 106 (2d Cir. 2019). It is therefore appropriate to dismiss all claims against New York City.

### III.    Plaintiff has not stated any federal claim for injunctive relief.

Plaintiff's requests for injunctive relief are denied. Plaintiff's complaint can be read to seek an injunction ordering ACS to report her allegations to the NYPD and the FBI on the grounds that ACS failed to report a "potential crime against a minor." *See* Compl. at 34; Pl.'s Opp'n at 3. That request is denied primarily for the reasons that Judge Cogan denied plaintiff's request for a preliminary injunction to the same effect. *See* Mem. & Order (Dec. 23, 2019) (Dkt. #16). "To the extent that [plaintiff] assert[s] claims based on the violation of federal criminal statutes . . . these claims are not cognizable, as federal criminal statutes do not provide private causes of action." *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009). And plaintiff has not identified any other statute that entitles her to an injunction directing ACS to report her allegations to other

law enforcement entities.  Insofar as the plaintiff requests that the court itself report her allegations to law enforcement agencies, *see* Pl.'s Opp'n at 2, that request is denied for substantially the reasons offered by Judge Cogan in denying plaintiff's similar request earlier in the case.  *See* Order (Jan. 14, 2020) (Dkt. #26).  This Court resolves cases and controversies; it "is not an investigative agency, nor does it serve as a referral source to any law enforcement agency."  *Ibid.*

Plaintiff's complaint can also be read to request an injunction under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") ordering ACS to return various forms that Ms. Wong signed to "allow them to have access to [her] and [her] son's health information." Compl. at 35.  That request is denied for substantially the same reasons that Judge Cogan denied plaintiff's request for a preliminary injunction to the same effect.  *See* Mem. & Order (Dec. 20, 2019) (Dkt. #13).  "HIPAA confers no private cause of action, express or implied."  *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020).[*]

## IV.   The Court declines to retain jurisdiction over plaintiff's state-law claims.

Having dismissed plaintiff's federal-law claims, I decline to retain jurisdiction over her state-law claims.  *See* 28 U.S.C. § 1367(c).  Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018).  These factors counsel in favor of dismissing plaintiff's state-law claims.  This case is still in its preliminary stages.  And it would be at least as convenient and fair for the parties to litigate these state-law claims in state court.

Indeed, "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining

---

[*] Insofar as plaintiff makes allegations about the conduct of courthouse staff as a basis for objecting to defendants' dismissal motion, *see* Pl's Opp'n at 2, the Court has carefully reviewed those allegations and determined that they do not provide a basis for denying the motion to dismiss.

state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); *see Pension Ben. Guar. Corp. ex rel. St Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (In the "usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2020) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well."). Plaintiff has not articulated any reason to exercise supplemental jurisdiction here. Her state-law claims are therefore dismissed.

## CONCLUSION

Defendants' motion to dismiss is granted. Plaintiff's federal-law claims are dismissed with prejudice. Dismissal with prejudice is appropriate where, as here, "further amendment of [the] complaint would be futile." *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 92 (2d Cir. 2003). Plaintiff, moreover, has not cured the deficiencies in her complaint even after three amendments and multiple court orders setting out why her action was not likely to succeed. This "[r]epeated failure to cure deficiencies by amendments previously allowed" justifies dismissal with prejudice. *Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 101 (2d Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiff's state-law claims are dismissed without prejudice to refiling in state court. The Clerk of Court is directed to close this case.

SO ORDERED.

  /s/  Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:        February 26, 2021
              Brooklyn, New York

12